**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERROL TRIBETT and NIKITA TRIBETT, on behalf of themselves and the classes defined herein, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 07 C 2809<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| BNC MORTGAGE, INC. and<br>PAN AMERICAN MORTGAGE, LLC. | )<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Errol Tribett and Nikita Tribett (the "Tribetts" or "Plaintiffs") filed suit against Defendants BNC Mortgage, Inc. ("BNC") and Pan American Mortgage, LLC ("Pan American") (collectively "Defendants") alleging various claims related to the financing of the Tribetts's purchase of a home. The case involves three class action claims (Counts I-III) and two individual claims on behalf of the Tribetts (Counts IV and V[1]): (1) violation of the Fair Housing Act ("FHA") against BNC and Pan American; (2) violation of the Equal Credit Opportunity Act ("ECOA") against BNC and Pan American; (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA" or "Consumer Fraud Act") against BNC and Pan American (class action claim); (4) violation of the Consumer Fraud Act against BNC and Pan American (individual claim); and (5) breach of fiduciary duty against Pan American. BNC moves to dismiss the Complaint as it relates to BNC. For the reasons stated herein, BNC's Motion to Dismiss is granted and the Plaintiff is given leave to file an amended complaint within 21 days.

---

[1] While the Complaint contains only five claims, the Tribetts label its fifth claim as Count VII. (Compl. ¶ 14.) For the sake of clarity, the Court will refer to this fifth claim as "Count V."

# PLAINTIFFS' ALLEGATIONS

Plaintiffs Errol Tribett and Nikita Tribett, husband and wife, ("the Tribbetts") are an African-American couple living in Richton Park, Illinois. (Compl. ¶¶ 4-5.) BNC is in the business of making and servicing residential mortgage loans. (Compl. ¶ 6.) Pan American is a mortgage broker and lender. (Compl. ¶ 7.)

In June 2005, the Tribetts purchased their current home in Richton Park. (Compl. ¶ 8.) In order to purchase this home, the Tribetts sold their previous home on May 31, 2005. (Compl. ¶ 9.) During the interim period between the sale of their old home and the purchase of their new home, the Tribetts placed their household goods in storage and stayed in a hotel with their three children. (*Id.*) Prior to the purchase of their new home, the Tribetts applied for financing through Mark Welrich ("Welrich"), a broker employed by Pan American. (Compl. ¶¶ 10-11.) Welrich met with the Tribetts, took the necessary information and supporting documents for the loan application, and informed the Tribetts that they would receive an interest rate of no higher than 8%. (Compl. ¶ 11.) Welrich also informed the couple that the closing fees would not exceed 1%. (*Id.*) Based on these representations, the Tribetts concluded that they could afford to purchase a new home. (*Id.*) Subsequently, Pan American applied for financing (on behalf of the Tribetts) from BNC. (Compl. ¶ 12.) Neither Welrich nor Pan American provided the Tribetts with the required preliminary disclosures, nor did they inform the Tribetts of the identity of their prospective lender. (*Id*.)

At closing, the Tribetts learned for the first time that BNC had decided to grant them two separate loans (one for $236,000 and another for $59,000) rather than one loan and that such loans would be made at an interest rate higher than the rate initially promised to the Tribetts. (Compl. ¶ 13, 15.) The Tribetts also learned that they were being charged in excess of 1% in closing fees.

(Compl. ¶ 14.)

Subsequently, the Tribetts discovered that Welrich and Pan American falsely reported the value or sale price of the Tribetts's previous home on the pre-printed loan application prepared by Welrich and Pan American. (Compl. ¶ 16.) Specifically, the application reflected a value of $295,000 for the home, when it was actually worth $155,000. (*Id.*) The Tribetts allege that Welrich and Pan American, who had the Tribetts sign the loan application before the closing, falsified this information to ensure that Welrich and Pan American would receive a broker fee and commission, respectively. (Compl. ¶¶ 16-17.) Pan American and Welrich knew that the Tribetts were in a vulnerable position and could not afford to cancel the transaction. (Comp. ¶ 21.) Thus, in light of Plaintiffs' position, the couple proceeded with the financing arranged by Pan American. (*Id.*)

In connection with the mortgage transaction, Pan American received broker compensation totaling $6,185 from the Tribetts and BNC. (Compl. ¶ 24.) The Tribetts paid Pan American a total of $2,645, including a direct brokerage fee of $2,360. (Compl. ¶¶ 14, 18.) BNC paid Pan American a "yield spread premium" of $3,450. (Compl. ¶ 19.) As relevant to this case, a "yield spread premium' ("YSP") is a payment made by a lender to a broker when a borrower agrees to pay an interest rate higher than the lender's "par" or "base" rate. (Compl. ¶ 22.) Calculation of the YSP amount is based on how much the interest rate paid by the borrower exceeds the lender's "par" or "base" rate. (*Id.*) Because a lender in willing to make the loan at a "par" or "base" rate, a lender's payment of a YSP to the broker and the broker's imposition of a higher interest rate on the borrower's loan are action take without regard to the borrower's creditworthiness. (Compl. ¶ 23.) Plaintiffs allege that "[YSPs] disproportionately impact minority borrowers, such as themselves." (Compl. ¶ 26.) They further alleged that "[t]his result is known and intended by the Defendants."

3

(*Id.*)

As a result of Defendants' conduct, the Tribetts were induced to sign loan documents providing for a loan that was "unnecessarily expensive" and "made on less favorable terms" than loans brokered or made to Caucasian individuals. (Comp. ¶ 27.) With respect to Count I, the Tribetts further allege that BNC and Pan American violated the FHA by paying and receiving, respectively, higher YSPs on the "loans made to minority borrowers, which necessarily impacts the rates charged to such borrowers." (Compl. ¶ 30.) With respect to the class action allegations of Counts I and II, the Tribetts also allege that "[t]he predominant common question is whether the payment and receipt of [YSPs] results in loan terms . . . [that] are intended to discriminate or have the effect of discriminating against Hispanic or African-American borrowers." (Compl. ¶¶ 36, 48.)

## **STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

**DISCUSSION**

I. Violations of the FHA (Count I) and the ECOA (Count II)[2]

BNC contends that the Complaint fails to state a claim for race discrimination against BNC under the FHA (Count I) and the ECOA (Count II). Under the FHA, it is "unlawful for any . . . entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). Similarly, the ECOA prohibits creditors from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction--on the basis of race." 14 U.S.C. § 1691.

The Complaint states mainly vague and conclusory allegations that do not establish a plausible entitlement to relief under the FHA or the ECOA. In support of their argument to the contrary, the Tribetts contend, among other things, that brokers like Pan American are more successful in persuading African-American and Latino credit applicants to accept unnecessarily higher rates and/or larger interest rate increases and that BNC designed and established a financial incentive structure that encourages brokers to engage in discretionary loan pricing. (Pl. Resp. Br. 10, 15.) The Tribetts also suggest that BNC and/or its brokers disproportionately target African-American and Latino communities for loans and that BNC continues to pay YSPs, despite its knowledge (through trade journals and other studies) of pricing disparities in subprime loans that

---

[2] Both parties filed extrinsic information in support of their respective positions. The purpose of a motion to dismiss is to test the sufficiency of the complaint under the applicable pleading standard, not to decide the merits of the challenged claims. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996) (*citing Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). Because the submission of facts outside the allegations of the complaint is improper under Federal Rule of Civil Procedure 12(b)(6), the Court has elected to ignore this information rather than convert the motion to one of summary judgment under Federal Rule of Civil Procedure 56. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1944).

have occurred as a result of race. (Pl. Resp. Br. 15-16.) While such allegations may weigh against dismissal of Counts I and II, the Tribetts failed to include any such allegations in their Complaint. Assuming that Plaintiff can make such allegations based on the facts that they have set forth in their supporting brief, Plaintiffs will be permitted to amend the Complaint and include such allegations in support of its FHA and ECOA claims.

Because Counts I and II are not supported by facts that, if taken as true, at least plausibly suggest that the Tribetts are entitled to relief, the Court finds the Complaint fails to state a claim under the FHA and the ECOA. *See Twombly*, 127 S. Ct. at 1974. As such, Counts I and II are dismiss without prejudice.

II. <u>Violations of the Consumer Fraud Act (Counts III and IV)</u>

The Tribetts bring two claims under § 2 of the Consumer Fraud Act, 815 ILCS 505/1 et seq, a class action claim (Count III) and an individual claim (Count IV). With respect to Count III, BNC argues and the Tribetts concede that its class action consumer fraud claim is barred by § 1691d(e) of the ECOA. Section 1691d(e) provides as follows: "Where the same act or omission constitutes a violation of this title . . . and of applicable State law, a person aggrieved by such conduct may bring a legal action to recover monetary damages either under this title . . . or under such State law, but not both." 15 U.S.C. § 1691d(e). Because the Tribetts have chosen to pursue their FHA and ECOA claims in federal court, Count III is dismissed.

Section 2 prohibits unfair or deceptive acts or practices or unfair methods of competition in the course of trade or commerce. To state a claim under § 2, the plaintiff must prove: (1) a deceptive or unfair act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception during a course of conduct involving trade or commerce; (3) the occurrence of the deception during

6

a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp*, 775 N.E.2d 951, 960 (Ill. 2002). To determine whether conduct is "unfair," courts may weigh the following factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 960-61. The Complaint includes a laundry list of allegedly deceptive or unfair conduct to which the Tribetts were subjected. Specifically, the Tribetts allege that, in the course of trade or commerce, BNC and Pan American: (1) misrepresented loan terms; (2) baited the Tribetts on one set of loan terms and switched them to another set of terms at the closing without notice; (3) deliberately took advantage of the Tribetts' vulnerable circumstances; and (4) falsified material information on their loan application. (Compl. ¶¶ 67-68.) The Tribetts further allege that the Defendants intended that the Tribetts would rely on the conduct. (Compl. ¶ 69.)

BNC contends that the Tribetts' allegations of deception are directed solely against Pan American. In response, the Tribetts seemingly admit that Pan American, rather than BNC, committed the alleged misrepresentation. They argue, however, that BNC "engaged in" the allegedly deceptive and unfair practices because Pan American was an agent of BNC.

An agency relationship exists when one "undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal." *Wargel v. First Nat'l Bank*, 460 N.E.2d 331, 334 (Ill. 1984). The test for such agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs.*, 148 F.3d 742, 745 (7th Cir. 1998). The parties must consent to a principal-agency relationship. *Id.* While the agency relationship may be created by conduct or contract, not all conduct or contracts will create

an agency relationship. *Id.* Further, an "apparent agency" relationship exists where "a reasonably prudent [person], exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess" the principal's authority. *Wargel*, 460 N.E.2d at 335. The existence and scope of an agency relationship are questions of fact. *Id.* at 334.

To plead the existence of an agency relationship, the plaintiff must "allege some factual predicate . . . to create the inference" of agency. *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F. Supp. 684, 687 (N.D. Ill. 1989). In support of their agency theory, the Tribetts argue that "BNC's YSP payment to Pan American (to increase the rate and for any other origination services) made the latter BNC's agent." (Pl. Resp. Br. 20.) This alleged payment, standing alone, is insufficient to create the inference of an agency relationship - either actual or apparent - between BNC and Pan American. As such, Count IV is dismissed without prejudice for failure to state a claim.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court grants BNC's Motion to Dismiss Complaint. Plaintiffs are given 21 days to file an amended complaint.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: January 17, 2008